FILED

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

99 APR 12 PM 3: 15

U.S. DISTRICT COURT
N.D. OF ALABAMA

|                        |   |                               |
|------------------------|---|-------------------------------|
| ROBERT GOSPODARECK,    | ) |                               |
|                        | ) |                               |
| Petitioner,            | ) |                               |
|                        | ) |                               |
| v.                     | ) | CIVIL ACTION NO. 96-PT-2855-S |
|                        | ) |                               |
| WARDEN STEVE DEES and  | ) |                               |
| THE STATE OF ALABAMA,  | ) |                               |
|                        | ) |                               |
| Respondents.           | ) |                               |

**ENTERED**

APR 1 3 1999

## MEMORANDUM OF OPINION

A magistrate judge of this court previously entered a report and recommendation providing

that the petitioner's application for a writ of habeas corpus be denied. (Doct. 14).[1] Specifically, the

magistrate judge found that the prosecution's use of his confession at trial did not violate the

petitioner's constitutional rights. Counsel for the petitioner filed objections to the report and

recommendation, asserting that the factual findings of the magistrate judge, as well as the state

courts, are in error as they did "not go far enough in enunciating the applicable conduct of the

police." (Doct. 17, p. 2). Counsel also asserts that the court should have given more weight to the

illegal and unconstitutional nature of the petitioner's confinement, including the fact that he was

taken after his arrest to the Hoover City Jail instead of the Jefferson County Jail; the "completely

dishonest and manipulative interrogation process" which included, *inter alia*, the fact that the

petitioner was interviewed by Detective Zarzour, a long-time friend of the petitioner and that there

were references by law enforcement officials during the interview to the gas chamber and to acts of

---

[1] References herein to "Doct. ___" are to the pleading numbers assigned by the Clerk of the Court.



sodomy occurring in prison. (*Id.*, pp. 2-3). Counsel further cites to various references in the suppression hearing and trial transcripts disputing the limitations on the petitioner's use of a telephone and his being denied chewing tobacco. (*Id.*, pp. 3-4). Finally, he again highlights the fact that Detective Zarzour was a friend of the petitioner and that the petitioner requested to remain at the Hoover Jail after making his statement rather than being confined in Jefferson County.

## I. DISCUSSION

As noted by the magistrate judge, the pertinent issue is whether under the totality of the circumstances, the confession was obtained in an unconstitutional manner. *Miller v. Fenton*, 474 U.S. 104, 112, 106 S. Ct. 445, 88 L. Ed. 2d 405 (1985); *Spano v. New York*, 360 U.S. 315, 79 S. Ct. 1202, 3 L. Ed. 2d 1265 (1959). The petitioner's objections generally assert six reasons why the magistrate judge and the state courts were mistaken in their conclusion that the confession was admissible.

### A. Hoover City Jail Versus Jefferson County Jail

Counsel for the petitioner notes in his objections that law enforcement authorities improperly placed the petitioner in the Hoover City Jail instead of the County Jail after he was arrested. (Doct. 17, p. 2). Although this was not the usual course of events, this action, alone or in conjunction with the other facts and circumstances, did not result in an unconstitutional confession. *See Crooker v. California*, 357 U.S. 433, 437, 78 S. Ct. 1287, 2 L. Ed. 2d 1448 (1958)(The failure of local authorities to comply with local statutes requiring that an accused promptly be brought before a magistrate alone does not render a confession involuntary.) *overruled on other grounds by Escobedo v. Illinois*, 378 U.S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977 (1964), and, *abrogated on other grounds by Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). The action did not

2

create an unlawful pressure upon the petitioner so as to overcome his ability to voluntarily waive his constitutional rights and provide a valid confession.

**B. Detective Zarzour**

When reviewing the admissibility of a confession, the Supreme Court in *Spano* stated that the use of a "childhood friend" in the interview process was "another factor which deserves mention in the totality of the situation." *Spano,* 360 U.S. at 323. The fact that Zarzour was a "friend" of the petitioner does not make the confession in this case unconstitutional. Unlike the petitioner herein, Spano was a 25 year old foreign-born man with no experience in the criminal justice system, he had only one-half year of high school, and he had a history of emotional instability. *Id.* He was questioned by at least twelve individuals for virtually eight straight hours. This court concludes that the relationship between the petitioner and Zarzour is a factor to be considered under the totality of the circumstances, but it is not such that vitiates an otherwise valid confession. The present case is clearly factually distinguishable from *Spano.*

**C. Use of a Telephone**

Concerning the use of a telephone, counsel asserts that "he [the petitioner] was told that he would have to see the detective before he could use the phone." (*Id.*, p. 3). In support of this point, counsel cites to pages 220 and 343 in the transcript. A close review of these pages, however, does not demonstrate that the petitioner asked to use the phone. To the contrary, Jailer Ben Mathews specifically testified that "he [the petitioner] never asked me to use the phone." (Doct. 8, Ex. A, Suppression Hearing Trans. p. 343). The petitioner's wife testified that she was informed when she called the Hoover Police that the petitioner was not allowed any phone calls or visitors. (*Id.*, p. 220). This testimony does not establish that the petitioner requested to use the telephone and was

3

improperly denied access to the same. Further, and more importantly, there is no indication in the record that he was ever denied access to a telephone when he wanted to contact an attorney. This conduct is simply irrelevant as the petitioner was not aware of the events. *Moran v. Burbine*, 475 U.S. 412, 423-24, 106 S. Ct. 1135, 89 L. Ed. 2d 410 (1986).

### D. Chewing Tobacco

Counsel for the petitioner also notes that the petitioner did make requests for chewing tobacco during the interview. Specifically, he cites to the trial transcript at pages 1519 and 1582. |8, Ex. A, pp. 1519, 1582). In the first reference, the officer asked if the petitioner wanted some more water. The petitioner responded, "Either that or a chew." (*Id*, p. 1519). The officer then stated, "Let me get you some more water right quick." (*Id.*). Later, the petitioner asked, "Tell me when can I get a chew?" (*Id.*, p. 1582). The officer responded, "In after (sic) a little bit." (*Id.*). The interview ended shortly thereafter. Again, under a totality of the circumstances review, the court finds that the fact that the petitioner was not provided with chewing tobacco during the interview does not make his confession unconstitutional. These terse references simply will not support a conclusion that the petitioner's free will was overcome in the present circumstances.

### E. References to the Gas Chamber, Sodomy, and Admonitions for Petitioner to Help Himself

Counsel also asserts that "scant attention" is given to the statements of the police during the interrogation. (Doct. 17, p. 3). Specifically, counsel cites to the officers' use of references to the gas chamber, sodomy on former police officers by other convicts, and admonitions that the petitioner must help himself by admitting what he did. (*Id.*). A review of the record demonstrates that the courts have given significant consideration to these matters. For instance, the magistrate judge noted

4

that the "interviewing techniques that included references to capital murder versus murder charges, the death penalty, the gas chamber, and the difficulties presented a law enforcement officer facing incarceration" did not alter the conclusion that the statement was knowingly, voluntarily, and intentionally made after a valid waiver of his [the petitioner's] constitutional rights. (Doct. 14, p. 24).

Reviewing these claims again, the court finds that these statements did not vitiate the validity of the petitioner's confession. The petitioner was an experienced law enforcement officer who would be aware of the potential penalties, including the possibility of a death sentence, and the stark realities of confinement in a penal institution. As noted by the magistrate judge, although such conduct is not condoned, the record does not show that the petitioner's free will was overcome by these statements so as to make the admissions involuntary.

Counsel for the respondent correctly notes that the record is replete with references by the officers during the interview to the fact that they wanted the petitioner to help them get to the truth of what happened and that it was the petitioner that could help himself. (Doct. 8, Ex. A., pp. 1464, 1525-26, 1532-33, 1535, 1545-46, 1548-50, 1558, 1560-61, 1565-67, 1570, 1576-77, 1581-82). However, such adjurations do not make the confession involuntary. *See Crooker*, 357 U.S. at 437 (Admonitions by the police to the defendant to tell the truth alone do not render a statement involuntary). A close review of the record, particularly the transcription of the interview which was read to the jury, convinces the court that these adjurations do not compel a finding that the statement was involuntary. To the contrary, as noted already, the totality of the evidence establishes the voluntary nature of the confession. Considering the seriousness of the charges facing the petitioner, the recorded statement shows that he was remarkably calm and collected.

**F. Petitioner's Request to Remain at the Hoover Jail**

Counsel also notes that after the interview was concluded, the petitioner asked to remain in the Hoover Jail. Counsel asserts that this "supports his [the petitioner's] fear infused by the admonitions of the interrogators about what will happen to police officers who are incarcerated. Their threat was well received by the petitioner." (Doct. 17, p. 4). This request was made by the petitioner because he was concerned that he may have had contact with individuals in the Jefferson County facility due to his work as a deputy sheriff and as a former Birmingham Police Officer. (Doct. 8, Ex. A., p. 127). The petitioner's request to remain at the Hoover Jail is a consequence of his extensive law enforcement history and does not demonstrate that the interrogating officers exceeded their authority and thereby obtained an involuntary confession.

**II. CONCLUSION**

The court has considered the entire file in this action together with the Magistrate Judge's Report and Recommendation and the objections of the petitioner and has reached an independent conclusion that the Magistrate Judge's Report and Recommendation is due to be adopted and approved. The court hereby adopts and approves the findings with the above notations and the recommendation of the magistrate judge as the findings and conclusions of the court.

To the extent that the petitioner asserts in his objections to the Report and Recommendation that the confession was unlawfully obtained, the record and applicable case law, particularly *Moran* and *Spano*, do not support this position. Under the totality of the circumstances, the court finds that the confession was lawfully obtained and properly used at trial. The petitioner has not rebutted by clear and convincing evidence the presumption that the factual determinations of the State courts are correct. 28 U.S.C. § 2254(e). Further, the determination of the trial court to allow the confession and

6

the upholding of that ruling by the Alabama Court of Criminal Appeals and the Alabama Supreme Court are not "contrary to" or an "unreasonable application of" clearly established Federal law as determined by the Supreme Court of the United States and are not "based upon an unreasonable determination of the facts in light of the evidence presented in the State Court proceedings." 28 U.S.C. § 2254(d)(1) and (2).

In accord with the recommendation, the petition for a writ of habeas corpus is due to be denied and dismissed. An appropriate order will be entered.

DONE, this 12 day of April, 1999.

ROBERT B. PROPST
UNITED STATES DISTRICT JUDGE